## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARIA LASHBROOK,**

Plaintiff,

No. 2:11-cv-15624

vs.                                                     Hon. Gerald E. Rosen

**PORTFOLIO RECOVERY ASSOCIATES,
LLC,**

Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

In this Fair Debt Collection Practices Act (FDCPA) case, Plaintiff, a debtor owing less than $3000.00 in outstanding credit card debt, asserts that Defendant is liable for certain conduct relating to its efforts to collect on this debt.  The parties have completed discovery and Defendant now seeks summary judgment.  Having reviewed the parties' briefs in support of and in opposition to Defendant's motion, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide Defendant's motion "on the briefs."  *See* Local

1

Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  For the reasons stated below, the Court finds that Defendant's motion should be granted in part and denied in part.

## II. FACTUAL BACKGROUND

As with many FDCPA cases, the pertinent facts in this matter relate not to the propriety of Plaintiff's debt owed to Defendant, but rather relate to Defendant's debt collection efforts.  In 1997, Plaintiff incurred a debt on a Capital One credit card totaling $2,826.01.  (Plf's Dep, at 36; Def's Ex. A, Dkt. # 32, at 3).  On March 22, 2007, Defendant -- a debt collection business -- purchased Plaintiff's debt from Capital One.  (Plf's Dep, at 40; Def's Ex. 2, Dkt. #25, at ¶ 13).  At the time of this acquisition, Plaintiff's debt was beyond the applicable 6-year statute of limitations.  *See* M.C.L. § 600.5807(8).  Plaintiff does not dispute owing this debt to Defendant.  (Plf's Dep, at 41, 43-44).

Shortly after Defendant acquired Plaintiff's debt from Capital One, Defendant began attempting to contact Plaintiff.  From May 2007 through April 2009, Defendant placed a multitude of calls to three telephone numbers apparently associated with Plaintiff, to no avail.  (Def's Ex. A, Dkt. # 32, at 9-12).  On April 19, 2009, Plaintiff's daughter -- with whom Plaintiff was living -- answered a call from Defendant.  (Def's Ex. A, Dkt. # 32, at 9; Plf's Dep., at 11).  Plaintiff's daughter indicated that "she would not give . . . her mother's number," that she did

not know how to get in touch with her, and asked to have her number removed. (Def's Ex. A, Dkt. # 32, at 9).

Defendant eventually obtained Plaintiff's then-current phone number in late 2010, leading to the events at issue in this matter. From December 2010 through November 2011, Defendant's records show that it placed over one hundred calls to Plaintiff. (*Id.* at 4-8, 55-58). According to Defendant, only three of these resulted in a conversation between Defendant's agents and Plaintiff: February 23, 2011; November 2, 2011; and November 14, 2011. (Def's Ex. 2, Dkt. # 25-3, at ¶¶ 29, 42; Def's Ex. A, Dkt. #32, at 6, 8, 55, 57). Defendant's record system is designed to log all calls, which cannot be altered by any collector or employee. (Def's Ex. 2, Dkt. # 25-3, at ¶¶ 9, 14-16). Therefore, Defendant asserts, Defendant's records reflect all calls to Plaintiff, including recordings of the three calls in 2011. (Def's Ex. 2, Dkt. # 25-3, at ¶¶ 29-30; Def's Ex. 2, Dkt. # 25-6, at 101). In one of the recorded conversations, Plaintiff, on February 23, 2011, acknowledged the Capital One debt, stated that she would "try to pay it," was "only working part-time," and offered to pay $10/month. (Def's Ex. 2, Dkt. # 25-3, at 5-7). The two other recorded calls are detailed below.

Plaintiff, however, disputes that the parties only spoke three times. In so disputing, she only relies on her memory. (Plf's Dep, at 52). While she is "not exactly sure" as to how many times she spoke with Defendant between December

3

2010 and November 2011, Plaintiff asserts that she spoke with them a "tremendous amount" of times -- "probably over a hundred times."  (Plf's Dep, at 19).   A breakdown of the number of total calls[1] and total conversations is as follows:

| Month | Total Calls (Per Defendant) | Total Conversations (Per Defendant) | Total Conversations (Per Plaintiff) |
|-------|------------------|-----------------|-----------------|
| Dec. 2010 | 2[2] | 0 | 12-15 |
| Jan. 2011 | 11-12[3] | 0 | 12-15 |
| Feb. 2011 | 9 | 1 | 10 |
| March 2011 | 10 | 0 | 10-12 |
| April 2011 | 12 | 0 | 10 |
| May 2011 | 8 | 0 | 10 |
| June 2011 | 12 | 0 | 10-12 |
| July 2011 | 12 | 0 | 8-12 |
| Aug. 2011 | 12 | 0 | 6-7 |
| Sept. 2011 | 9 | 0 | 7 |
| Oct. 2011 | 11 | 0 | 7-8 |
| Nov. 2011 | 4 | 2 | 1-2 |
| | | | |
| **Total** | 112-113 | 3 | 103-120 |

(Def's Ex. A, Dkt. #32, at  4-8, 55-58; Plf's Dep., at 23-32).

Plaintiff characterized most of these hundred-plus calls quite similarly: Defendant would call her stating that she "owed this money," was "rude,"

---

[1] The record is silent with respect to how many total calls Plaintiff asserts Defendant made.

[2] The Statute of Limitations for a FDCPA claim is one year.  § 1692k(d).  Plaintiff filed her Complaint on December 23, 2011 and therefore any call placed prior to that is not actionable.  Accordingly, the Court will only consider two calls placed in December 2010.  (Def's Ex. A, Dkt. # 32, at 8, 58).

[3] Defendant's records are inconsistent here.  On the one hand, one record shows that Defendant placed 11 calls to Plaintiff in January 2011, (Def's Ex. A, Dkt. # Ex. 32, at 8), but another shows 12 calls.  (*Id.* at 57-58).

"demanding," asked things such as "what kind of person are you that you don't pay your debts and stuff like that," and "wanted to know when [she] was going to pay [the debt]." (*See, e.g.,* Plf's Dep, at 23-24, 26-28, 31-32). Plaintiff would answer by stating "I'm not sure." (*Id.* at 24, 26-28, 31-32). Defendant made her "feel like [she] was not a good person or a good citizen of this country" and "very bad about [her]self." (*Id.* at 26-28).

She did, however, provide a little more detail about a few specific calls. Sometime in the middle of July, Defendant "threatened her with a lawyer." (*Id.* at 29). Plaintiff described the conversation as follows: "[F]irst they asked me when I was going to pay this bill. I told them, I do not know. And then they says, We are going to contact a lawyer. We are -- they threatened me with a lawyer that they were going to sue me. . . . We can contact a lawyer and we can sue you. . . . We could send this to a lawyer and we could sue you." (*Id.* at 30, 45). This "shock[ed]" Plaintiff and she hung up. (*Id.* at 30). Defendant never raised this with Plaintiff again. (*Id.* at 33). Additionally, sometime in October 2011, Plaintiff asked Defendant to "send [her] papers about the debt." (*Id.* at 41-42). Defendant responded by telling here that it "cannot send papers and [she] ha[d] to pay this." (*Id.* at 42).

In addition to the total number and content of the calls, Plaintiff also complains about the number of times Defendant would call in a given day. (*Id.* at

5

25, 28, 31).  In February 2011, for example, there were "at least two days" where she received three calls in one day.  (*Id.* at 25).  The record is not clear with respect to whether Plaintiff *spoke* with Defendant during each of these calls, whether Defendant just placed calls that went *unanswered*, or some combination thereof. The following exchange between Plaintiff and Defendant's attorney highlights this ambiguity:

> Q:  Let's go to February 2011.  About how many times did you speak to PRA in February of 2011?
>
> A:  Maybe 10 times and sometimes these calls were like in the same day.  Within two hours I'd get three calls.
>
> Q:  So at least, on how many days would you say you got three calls within two hours on the same day?
>
> A:  I'd say at least two of those days.

(*Id.*).

Ultimately, Defendant's contact with Plaintiff regarding the Capital One debt stopped in November 2011.  On November 2, 2011, Plaintiff told Defendant the following: "I know nothing about it and according to the FCC you cannot call me anymore.  Please send a letter in the mail and I know nothing about this account."  (Def's Ex. 2, Dkt. # 25-3, at 8).  Finally, on November 14, 2012, Defendant called Plaintiff twice -- speaking to her once.  (Def's Ex. 2, Dkt. #25-3, at 9; Def's Ex. 3, Dkt. #25-4, at 14-15; Def's Ex. A, Dkt. #32, at 6, 55).  When

Plaintiff answered, she stated "this is the second call I have got today. Now I am going to call this lawyer who is gonna take care of this for me . . . You are not allowed to call me. I told you people to send me a letter. I know nothing about this. Now I am gonna take action against you as a collection agency." (Def's Ex. 2, Dkt. #25-3, at 9). Plaintiff never provided Defendant with a written request to stop contacting her; rather her attorney did so on her behalf on November 16, 2011. (Def's Ex. 3, Dkt. # 25-4, at 18). Less than a week later, Defendant notified Plaintiff's attorney that it had closed Plaintiff's account and that it would "no longer attempt to collect the balance of this account from [Plaintiff]." (Def's Ex. A, Dkt. # 32, at 52). Plaintiff filed this instant lawsuit a month later.

## III. DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In addition, where a

moving party -- here, Defendant -- seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

## B.     The Fair Debt Collection Practices Act

The FDCPA's stated purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "[T]he FDCPA is 'extraordinarily broad,' crafted in

response to what Congress perceived to be a widespread problem." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (citation omitted). Accordingly, the claimed FDCPA violations must be analyzed under a "least sophisticated consumer" standard. *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992). This standard serves a dual purpose: (1) it "ensures 'that the FDCPA protects all consumers, the gullible as well as the shrewd;'" and (2) "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) (citation omitted). In practice, this standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999) (citation omitted).

Plaintiff asserts violations of four provisions of the FDCPA: § 1692c (impermissible communication with a third party); § 1692d (harassing, oppressive, or abusing conduct in connection with the collection of a debt); § 1692e (false, deceptive, or misleading representation or means in connection with the collection of any debt); and § 1692f (unfair or unconscionable means to collect or attempt to collect any debt). In addition to denying liability under these provisions,

Defendant argues it is entitled to summary judgment under the FDCPA's bona fide error defense. *See* 15 U.S.C. § 1692k(c). Each contention is addressed in turn.

## C.  15 U.S.C. § 1692c(b) -- Impermissible communication with a third party

Section 1692c(b) governs communications debt collectors may have with third-parties regarding a consumer's debt. With exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." § 1692c(b). This third-party communication restriction does not preclude a debt collector from acquiring a consumer's "location information" -- "a consumer's place of abode and his telephone number at such place of employment" -- from a third-party. §§ 1692a(7); 1692b, 1692c(b). In so doing, a debt collector shall, among other things: "(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer; (2) not state that such consumer owes any debt; (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." § 1692b(1-3).

10

Here, there are no record facts establishing that Defendant communicated with any person in connection with the collection of Plaintiff's debt in violation of § 1692c(b).  First, Plaintiff has no personal knowledge of any communications between Defendant and any third-party regarding her debt.  Second, Defendant's records reflect that it spoke with Plaintiff's daughter on April 19, 2009.  Notes from this call -- which Plaintiff cannot dispute -- reflect no violation of § 1692c(b) and, in any event, the call is not actionable because it is outside the one-year statute of limitations.  § 1692k(d).  Third, after this date, there is no record evidence indicating *any* communications between Defendant and a third party in connection with the collection of Plaintiff's debt.

To the extent Plaintiff testified that her daughter told her that Defendant called "quite a few times in the spring and part of the summer" of 2011 after having given Defendant her telephone number and address (Plf's Dep, at 45-47), Plaintiff may not offer this statement for the truth of the matter asserted in opposition to Defendant's Motion for Summary Judgment because "[a] court cannot rely on unsworn inadmissible hearsay when ruling on a summary judgment motion."  *Hoover v. Walsh*, 682 F.3d 481, 491 n. 34 (6th Cir. 2012); *see also Millsap v. CCB Credit Servs., Inc.*, 2008 WL 8511691, at *8 (E.D. Mich. Sept. 30, 2008) (granting summary judgment where plaintiff had no personal knowledge of

communications between the defendant debt collector and her relatives).[4]

Additionally, Plaintiff's daughter expressly denies having any recollection of communication with Defendant as well as has no knowledge regarding to whom Plaintiff owes/owed debts, including Defendant.[5]   (Def's Ex. 4, Dkt. # 25-5, at ¶¶ 7-13).   Accordingly, Defendant is entitled to summary judgment in its favor on Plaintiff's § 1692c(b) claim.

---

[4] It is unclear to the Court what purpose is served by Plaintiff's affidavit attached in support of her Response purporting to attest to the facts that "Defendant has also sent repeated harassing calls to my daughter . . . in connection with the collection of debts" and that "[t]hese calls to my daughter caused great embarrassment to me." (Plf's Resp., Dkt. # 34-1, at ¶¶ 4-5).  First, these are not "new" facts and rather just replicate in conclusory fashion her deposition testimony.  Second, to the extent these "new" facts contradict her deposition testimony, "it is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition."  *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 384 (6th Cir. 1991); *cf Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) ("A deposition is not a take home examination.").  Third, as discussed above, Plaintiff lacks sufficient personal knowledge to attest to the "harassing" nature of these calls.  Therefore, the Court will not consider these parts of Plaintiff's affidavit.

[5] Plaintiff correctly notes that her daughter only attests to lacking any recollection or knowledge of communication with Defendant and therefore does not "contradict the statements made by Plaintiff" and raises the issue of her daughter's credibility. (Plf's Resp., Dkt. # 34, at 10).  As noted above, however, this assertion fails to recognize the hearsay issue of Plaintiff's statements.  It also seemingly tries to improperly shift the burden of proof on this issue: It is Plaintiff's burden of proof on the issue of whether Defendant had improper communications with her daughter and Defendant is entitled to summary judgment by demonstrating that the nonmoving party -- Plaintiff -- lacks evidence to support an essential element of its claim.  *Pack*, 434 F.3d at 813 (*citing Celotex*, 477 U.S. at 322-23).

**D.**   **15 U.S.C. §§ 1692d, 1692d(5) – Harassing, oppressive, or abusing conduct in connection with the collection of a debt**

Section 1692d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of debt." § 1692d.  "This provision of the FDCPA lists nonexclusive examples of the type of conduct prohibited by the Act," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329-30 (6th Cir. 2006) (citing § 1692d(5)).  "[A]lthough the question of whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . Congress has indicated its desire for the courts to structure the confines of § 1692d.  Courts have therefore dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Id.* at 330 (second alteration in original).  In other words, the debt collector's conduct must be "intended to embarrass, upset, or frighten a debtor." *Id.*

Plaintiff argues that Defendant's intent to harass Plaintiff may be inferred from the volume, frequency, and nature of Defendant's calls.  As this Court has observed:

> [T]he determination whether a debt collector's phone calls amount to "actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Akalwadi v. Risk Management Alternatives, Inc.,* 336 F. Supp. 2d 492, 505 (D. Md. 2004). Thus, the courts have found, for example, that an immediate callback after the debtor has hung up or has indicated his or her unwillingness to speak to the debt collector may constitute improper harassment. *See Lovelace v. Stephens & Michaels Associates, Inc.,* 2007 WL 3333019, at *7 (E.D. Mich. Nov. 9, 2007); *Joseph v. J.J. MacIntyre Cos.,* 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002); *Kuhn v. Account Control Technology, Inc.,* 865 F. Supp. 1443, 1452–53 (D. Nev. 1994). In contrast, a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages. *See Udell v. Kansas Counselors, Inc.,* 313 F. Supp. 2d 1135, 1143–44 (D. Kan. 2004). Plaintiff carries the burden of establishing that Defendant's calls in this case ran afoul of § 1692d(5). *See Kerwin v. Remittance Assistance Corp.,* 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).

*Millsap*, 2008 WL 8511691 at *7.

First, Plaintiff disputes Defendant's assertion that the parties only spoke on three occasions, testifying instead that she spoke with Defendant a "tremendous amount" of times "probably [totaling] over a hundred times" between December 2010 and November 2011. Based upon Plaintiff's testimony, the parties spoke at most 120 times in one year -- about once every three days. This factual assertion regarding the call load, alone, is not enough to raise a triable issue of harassment. *See, e.g., Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010) (allegation of daily or "near daily" phone calls not enough to raise issue of material fact). And, she has provided no specifics regarding the content of these

calls and instead presents them as "rude," "demanding," and making her feel like she was "not a good person." This is not sufficient to create an issue of material fact. *See Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 809 (N.D. Ill. 2010) (rude language does not by itself violate § 1692d); *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F. Supp. 2d 795, 799 (D. Minn. 2009) ("Section 1692d is meant to provide a remedy for harassment, oppression, and abuse, not for bad manners.").

Second, Plaintiff points to her assertion -- and Defendant's records reflecting -- that she sometimes received multiple calls during a single day.[6] The ambiguity of the record as to whether Defendant just *called* Plaintiff or actually *spoke* with Plaintiff multiple times during a single day requires -- when viewed most favorably in Plaintiff's light -- finding a genuine issue of material fact. On the one hand, placing a few calls to a debtor per day that go unanswered in an attempt to reach the debtor is likely not harassment under § 1692d. On the other, calling and speaking with a debtor multiple times in one day likely does constitute harassment. *Millsap*, 2008 WL 8511691 at *7. This is an issue to be determined by a jury.

Third, Plaintiff contends the volume of Defendant's calls should be reviewed in conjunction with Defendant's "egregious" conduct -- contacting her after

---

[6] For the same reason set forth in Footnote 4 regarding replication of Plaintiff's deposition testimony, this Court disregards Plaintiff's statement in her affidavit that "Defendant has placed multiple harassing calls to me in a single day, sometimes as often as three times in a single day." (Plf's Resp., Dkt. # 34-1, at ¶ 3).

November 2, 2011 where she stated: "I know nothing about it and according to the FCC you cannot call me anymore.  Please send a letter in the mail and I know nothing about this account."  According to Plaintiff, without authority, this shows that "Defendant was on notice its calls were unwanted and that Plaintiff disputed the debt."  (Plf's Resp., Dkt # 34, at 13).  In short, she argues, "[i]t is clear based on Defendant's communications with Plaintiff in November 2011 that it intended to harass her."  (*Id.*).

Quite the opposite, it is not clear that Defendant intended to harass her and Plaintiff's argument belies both the record evidence *and* the law.  To the latter, it is axiomatic that "[a]*ny* attempt to collect a defaulted debt will be unwanted by a debtor."  *Harvey*, 453 F.3d at 330.  Simply because a call is unwanted does not make it harassing under § 1692d.  As to the former, the record is clear that Plaintiff acknowledged her debt -- and even contemplated a payment plan with Defendant on February 23, 2011 -- and continued to indicate to Defendant throughout their calls until November that she was just "not sure" when she was going to pay on the debt.  While she expressly indicated in November 2011 that she now "knew nothing" about the debt and that she no longer wanted to be contacted, no jury would find that the Defendant's subsequent conduct to be "harassing."  This was the first time Plaintiff indicated she did not want to be contacted.  She did not, as required by the FDCPA, notify Defendant in writing that she "wishe[d Defendant]

to cease further communication with [her.]"   § 1692c(c).   Defendant did not *immediately* call back after Plaintiff hung up or indicated her unwillingness to speak.  Instead, it waited twelve days, and then placed its last two calls to Plaintiff.

Accordingly, Plaintiff's § 1692d claim may only proceed to a jury with respect to her "multiple calls" allegation.

**E.    15 U.S.C. §§ 1692e, e(5), and e(10) – False, deceptive, or misleading representation or means in connection with the collection of any debt**

Under section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e.  Similar to other provisions proscribing certain conduct, the FDCPA lists several non-inclusive examples of "false, deceptive, or misleading representation or means," including, as applicable here, "(5) [t]he threat to take any action that cannot legally be taken or that is not intended to be taken" and "(10) [t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  §§ 1692e(5), (10).

In interpreting this provision, the Sixth Circuit has held that "a statement must be *materially* false or misleading to violate Section 1692e."  *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).  "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer."  *Id.* at 326-27.  Accordingly, a court must determine "whether there is a reasonable

17

likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." *Grden v. Leikin Inger & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011). It is also not enough to establish that a communication is truthful in order to avoid liability under Section 1692e because "sometimes even a true statement can be misleading." *Id.*

Plaintiff premises her § 1692e argument on her assertion that Defendant threatened to contact a lawyer and to sue her in July 2011 because Plaintiff's debt had passed the applicable statute of limitations and that Defendant has not instituted a suit against her to collect on her debt. As an initial matter, the FDCPA does not prohibit Defendant from collecting on a time-barred debt. The question here is whether threatening to file a lawsuit to collect a debt that is barred by the statute of limitations violates § 1692e. While the Sixth Circuit has not addressed this issue, it has "note[d] that courts in other circuits have held that the filing of a lawsuit to collect a debt that is barred by the statute of limitations violates several subsections of 15 U.S.C. § 1692e." *Harvey*, 453 F.3d at 332 (declining to address the issue of whether the actual filing of a lawsuit to collect on a time-barred debt violates § 1692e and collecting cases); *see also Jenkins v. Gen. Collection Co.*, 538 F. Supp. 2d 1165, 1172 (D. Neb. 2012) ("[A] violation of the FDCPA *has* occurred when a debt collector attempts, through threatened or actual litigation, to collect on a time-barred debt that it is otherwise valid."); *Larsen v. JBC Legal Grp., P.C.*, 533

18

F. Supp. 2d 290, 302-03 (E.D.N.Y. 2008) ("To allow a debt collector to threaten a consumer with legal action, even though the statute of limitations would provide the consumer with the ultimate defense, would be to encourage manipulation and misuse of the legal system.") (citation omitted); *Dunaway v. JBC Associates, Inc.*, 2005 WL 1529574, at *4 (E.D. Mich. June 20, 2005) ("[T]he FDCPA prohibits a debt collector from threatening to sue on a time-barred debt as such statements misrepresent the legal status of the debt and threaten legal action that cannot legally be taken."); *cf Sanford v. Portfolio Recovery Associates, LLC*, 2013 WL 3798285 (E.D. Mich. July 22, 2013) (collecting cases). This Court agrees with the above cited cases and finds that a debt collector violates § 1692e by threatening litigation on a debt foreclosed by the applicable statute of limitations.

Indeed, this is a type of claim that Defendant -- and its counsel -- has faced before. For example, in *Swearingen v. Portfolio Recovery Associates, LLC*, 892 F. Supp. 2d 987, 995 (N.D. Ill. 2012), one of the plaintiffs provided the following testimony regarding Defendant's "threatened" lawsuit that precluded summary judgment:

> A.   They threatened to sue me. They said we can have you sued over this. We can take everything you own over this. We can tie up your bank accounts over this....
>
> Q.   Okay. When did they tell you this?
>
> A.   When she called in the investigator. And they were investigating to start a lawsuit and that could entail taking my

> check, my paychecks, my—they could take my—she said they
> could take my bank accounts, whatever I had. They could take
> property, if they got a judgment against me....

*Id.* at 995.  Noting that Defendant denied this allegation, the court found that the plaintiffs provided "enough admissible evidence . . . to create a genuine issue of fact." *Id.*  The same is true here, though the record is admittedly less clear with respect to Defendant's alleged threats.  Plaintiff testified that in July 2011, Defendant told her that it was "going to contact a lawyer" and that it was "going to sue [her.]"  Later, she provided various iterations, stating that Defendant told her "[w]e can contact a lawyer and we can sue you" and that "[w]e could send this to a lawyer and we could sue you."[7]

Defendant absolutely denies that it ever spoke with Plaintiff in July 2011. Rather, Defendant points to its call log -- which Plaintiff only disputes with her memory -- that shows while Defendant called Plaintiff several times in July 2011, Plaintiff never answered.  Defendant also asserts that Plaintiff did not affirmatively put forth any records to corroborate her "self-serving" testimony.[8]  This may be the

---

[7] For the same reasons set forth in Footnote 4 regarding replication of Plaintiff's deposition testimony and the fact that this statement contradicts her testimony that Defendant threatened her only once (Plf's Dep, at 33), this Court disregards Plaintiff's statement in her affidavit that "[o]n a number of occasions, Defendant threatened me, telling me that my account would be 'sent to lawyers.'"  (Plf's Resp., Dkt. # 34-1, at ¶ 6).

[8] For example, Defendant argues that Plaintiff should have produced *all* of her phone records on her own, or in response to one of Defendant's requests for production.  If Plaintiff failed to satisfy her discovery obligations, Defendant of

case, but the Court finds that her testimony is sufficiently specific to show a genuine issue of material fact as to whether Defendant used false, deceptive, or misleading representation or means in connection with the collection of Plaintiff's debt.[9]  *Celotex*, 477 U.S. at 324; *see also Lovelace v. Stephens & Michaels Associates, Inc.*, 2007 WL 3333019, at *5-6 (E.D. Mich. Nov. 9, 2007) (letter stating that if plaintiff "failed to make full payment on the debt or reach a payment agreement . . . within ten days, the 'file will be forwarded to our local attorney for resolution'" raised genuine issues of material fact sufficient to deny defendant's summary judgment motion as to whether the defendant intended to sue the plaintiff).

**F.    15 U.S.C. § 1692f -- Unfair or unconscionable means to collect or attempt to collect any debt**

Under Section 1692f, a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt."  § 1692f.  Section 1692f also lists

---

course could have sought relief with this Court -- it did not.  The Court also suggests that Defendant had other avenues to obtain these records, including issuing a Rule 45 subpoena to Plaintiff's telephone provider for such records. Finally, the Court notes that Defendant's protestation that Plaintiff's testimony is "self-serving" is not a valid objection or a basis upon which a court may premise a grant of summary judgment on a claim; although cases and trials would indeed be shorter if parties were precluded from adducing self-serving testimony, this, of course, is not the prevailing rule.

[9] And, while not raised by Plaintiff, her testimony that Defendant told her she "ha[d] to pay" her debt also raises a triable issue of fact for her § 1692e claim. Because Plaintiff was under no obligation to pay this debt, the statement that she "must pay" -- viewed through the eyes of an unsophisticated consumer -- is sufficiently misleading to be presented to a jury.

several noninclusive examples of violative conduct. *See* § 1692f(1-8). Plaintiff does not assert that Defendant engaged in any of these specific examples of violative conduct and rather generally relies upon § 1692f's general "unfair or unconscionable means" provision. For this assertion, Plaintiff points to the conduct supporting her other FDCPA claims. (Plf's Resp., Dkt. # 34, at 14). These assertions, however, lack any evidentiary support regarding *unfair* or *unconscionable* means and rather just duplicate Plaintiff's other claims. Summary judgment is appropriate on Plaintiff's § 1692f claim. *See, e.g., Christy v. EOS CCA*, 905 F. Supp. 2d 648, 656 (E.D. Penn. 2012) ("A complaint will be deemed deficient under [§ 1692f] if it does not identify any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA.") (alterations in original).

## G.    15 U.S.C. § 1692k(c) -- Defendant's bona fide error defense

Section 1692k(c), commonly known as the "bona fide error defense" section, provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

§ 1692k(c). "[T]his defense applies to mistakes of law as well as clerical errors." *Hartman*, 569 F.3d at 614. A debt collector may escape liability if it proves by a preponderance of the evidence that: "(1) the violation of unintentional; (2) the

violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Id.* (citation omitted).[10] "The first element of the bona fide error defense is a subjective test that assesses the credibility of the debt collector's assertions that the FDCPA violation was not intentional. The second and third elements of the bona fide error defense are objective inquiries." *Montgomery v. Shermeta, Adams & Von Allmen, P.C.*, 885 F. Supp. 2d 849, 857 (W.D. Mich. 2012) (citations omitted).

Here, although there are a significant number of facts in the record indicating that Defendant's violations were unintentional or that procedures might be reasonably adapted to avoid the asserted errors in this case, this Court will not examine whether Defendant satisfied the first or third prongs of the bona fide error test because the record is silent with respect to the second prong. In other words, the three-part test is inclusive, and there simply is no evidence that Defendant's alleged violations were a *result* of a bona fide error. *Shields v. Merchants & Med. Credit Corp., Inc.*, 2010 WL 2613086, at *10 (E.D. Mich. June 28, 2010) ("MMCC advances no argument whatsoever with regard to the first two elements of the bona fide error defense—whether the errors made by Sage and Pody were unintentional and whether the errors resulted from a bona fide error. Therefore,

---

[10] Defendant curiously cites another Eastern District of Michigan case -- *Charbonneau v. Mary Jane Elliott*, 611 F. Supp. 2d 736 (E.D. Mich. 2009) -- that omits the "result of a bona fide error" element. This Court is bound by *Hartman* and its predecessors requiring proof regarding the "result of" element.

MMCC has not carried its burden of demonstrating that the defense applies with regard to the FDCPA violations committed by Sage and Pody."); *McDermott v. Randall S. Miller & Associates*, 835 F. Supp. 2d 362, 373 (E.D. Mich. 2011) ("While Defendant may ultimately prevail on [the bona fide error] defense, the Court concludes it is an issue for the trier of fact given these facts and given the manner in which Defendant presented this ground for relief (i.e., not discussing or explaining its procedures in its brief."). Therefore, Defendant's Motion for Summary Judgment on the bona fide error defense is denied.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is granted in part and denied in part. Accordingly, the Court enters partial Summary Judgment for Defendant and dismisses only the following claims with prejudice: (1) Plaintiff's 15 U.S.C. § 1692c(b) claim; (2) Plaintiff's 15 U.S.C. §§ 1692d, 1692d(5) claims except her "multiple calls" claim; and (3) Plaintiff's 15 U.S.C. § 1692f claim.

IT IS SO ORDERED.

Dated: August 29, 2013              s/Gerald E. Rosen
                                    GERALD E. ROSEN
                                    CHIEF, U.S. DISTRICT COURT

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 29, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, 313-234-5135